# Richmond.

First National Bank of Roanoke v. Terry's Adm'r.

February 7, 1901.

1. INSURANCE—*Insurable Interest—Debtor and Creditor—Limit of Recovery.*
   A credtior may insure the life of his debtor, or may acquire, by assignment, a policy on his life after it has been issued to the debtor. The interest of the creditor in the policy, however, will be limited to the amount of the debt at the time of the death of the assured, together with such premiums as the creditor has paid to preserve the policy, with interest thereon.

2. LIFE INSURANCE—*Assignment by Debtor to Creditor—Terms of Assignment—Limit of Recovery.*—It is immaterial whether the assignment of a life policy by a debtor to his creditor is absolute and unconditional, or is collateral for the amount of the debt. In either case, equity will regard the assignment as only a collateral security.

3. EVIDENCE—*Corporation as Party to Contract—Death of Other Party—Competency of Agent of Corporation.*—Bank directors are competent witnesses to testify in behalf of the bank in an action by the bank against a third person, although they were the agents of the bank who negotiated the transaction in suit with the third party, and the latter is dead.

Appeal from a decree of the Circuit Court of the city of Roanoke, pronounced May 19, 1900, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*Thomas W. Miller*, for the appellant.

*Scott & Staples*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

Peyton L. Terry, on the 29th day of July, 1896, assigned to the First National Bank of Roanoke all his right, title and interest in two policies of insurance on his own life for $5,000 each, issued, respectively, August 7, 1886, and September 14, 1886, both payable to his personal representatives or assigns, within sixty days after satisfactory proofs of his death had been furnished to the insurance society.

At the time of the assignment, the insured was indebted to the bank in the sum of $5,000, for money loaned, and was bound as guarantor, with one J. A. Jamison, on two notes, made by the P. L. Terry Milling Company, one for $5,200, and the other for $100, held by the bank. Terry was then in a failing condition, and the bank was pressing him for a settlement. At his instance, it appointed two of its directors as a committee to confer with him to see what arrangement could be made as to his liability. He proposed that he would assign to the bank the two life insurance policies, which were then held as collateral by the American Deposit and Loan Company to secure a debt of $1,128.60 which he owed it, if the bank would pay that debt, and discharge him from his indebtedness to it. This proposition was accepted by the bank. The bank paid the debt due from Mr. Terry to the American Deposit and Loan Company, which held the policies of insurance at the time they were assigned to the bank, and obtained possession of them. It paid the premiums on the policies until Mr. Terry's death, in the year 1898, when it collected the policies in full from the insurance company, and appropriated the proceeds to its own use, and refused to account to Terry's estate for any part thereof. Thereupon, this suit was brought by his personal representative to recover the sum collected by the bank, less the premiums paid by it, upon the ground

that the assignments were illegal, and should be declared void
*in toto.*

There is nothing in the record to show that either the insured
or the appellant had any other object in view when the assign-
ments were made than to settle or secure the indebtedness which
the insured was liable for to the bank.

The law permits creditors, as well as others who have an
interest in the life of another, to become the owner of an insur-
ance policy on the life of such other person, either by contracting
with the insurance company, or by contract made by the party
whose life is insured, or by assignment of the policy after it is
issued. If the interest in the life of the insured is of a definite
character, as that of a creditor, the interest of the holder of such
a policy will be limited to the amount of such liability at the
time of the death of the insured, together with such premiums as
the creditor has paid to preserve the policy, with interest thereon,
and the residue or remainder of the policy will be the property
of the party insured. *Roller* v. *Moore,* 86 Va. 512; *Long, &c.* v.
*Britannia Company, &c.,* 94 Va. 594; *Beatty* v. *Downing,* 96
Va. 451; *New York Life Ins. Co.* v. *Davis,* 96 Va. 737; *Tate*
v. *Building Ass'n,* 97 Va. 74.

The extent of the interest which a creditor can acquire in a
policy of insurance on the life of his debtor being thus limited
by the policy of the law to prevent speculation in insurance in
human life, it is wholly immaterial whether the policies were
assigned as collateral security for the amount of the indebtedness,
or by an absolute bill of sale. In either case the result is the
same, and equity will regard the assignment, in legal effect, as a
collateral security in the one case as in the other. *Helmetage's
Adm'r* v. *Miller,* 76 Ala. 183, 188; *Cawthorne* v. *Perry,* 13 S.
W. 268 (Texas); 4 Joyce on Ins., sec. 3488.

The next question is, what indebtedness was covered by the
assignment?

The counsel for appellee insist that the liability of Mr. Terry,

as guarantor on the P. L. Terry Milling Company note, did not enter into the transaction when the policies were assigned, and that the subsequent conduct of the bank shows this. The terms of the agreement between the parties were not reduced to writing, but the positive testimony of the two directors (who were clearly competent witnesses, *Mut. Life Ins. Co.* v. *Oliver*, 95 Va. 445), is that it embraced all of Mr. Terry's indebtedness to the bank, and the president of the bank testified that the bank and Mr. Terry, with whom he had a conversation after his proposition had been accepted, so understood it. No witness testifies to the contrary, and the conduct and acts of the bank relied on to overcome that positive testimony are wholly insufficient to do so. The acts of the bank most relied on to show that the indebtedness of Mr. Terry, as guarantor, was not embraced in the transaction, were payments made to the bank by him and his trustees, after the assignment of the policies of insurance, which were credited on the notes which he had guaranteed. Unexplained, these payments would tend very strongly to sustain the appellee's contention. It appears, however, that Mr. Terry and Mr. Jamison owned all, or practically all, of the stock of the P. L. Terry Milling Company, the maker of the guaranteed notes; that its property had been sold and conveyed to another corporation, known as the Roanoke Grocery and Milling Company, in which they were large stockholders, and that in consideration of the sale and conveyance of the P. L. Terry Milling Company property to the Roanoke Grocery and Milling Company, fully paid up stock was issued by the last-named company to Terry and Jamison. Messrs. Terry and Jamison, the owners of the stock of the P. L. Terry Milling Company, having sold and conveyed its property to the Roanoke Grocery and Milling Company, and received the consideration therefor in the paid-up stock of the latter, felt bound to make some provision for the payment of the debts of the former company. To this end, they undertook to pay to the P. L. Terry Milling Company a sum sufficient to

satisfy its indebtedness to the bank, and each gave his note payable to that company for his share of its indebtedness. Terry deposited with his note (which was for $2,239.70) as collateral to secure its payment, twenty-five shares of his stock of the Roanoke Grocery and Milling Company. These notes, together with the collateral attached, were handed by Jamison, the secretary and treasurer of the P. L. Terry Milling Company, to the president of the bank, but not as collateral to the notes of the P. L. Terry Milling Company held by the bank.

This being the condition of things when Terry assigned his policies of insurance to the bank, he continued to make payments on his notes to the P. L. Terry Milling Company. Jamison, secretary and treasurer of that company, states that those payments were made to him; that he credited them on the note for $2,239.70 made by Terry to the P. L. Terry Milling Company, and that he paid the same, together with funds of his own, to the bank as discounts or curtailments on the P. L. Terry Milling Company debt held by the bank. The trustees, in the general assignment made by Terry for the benefit of his creditors, with the assent of Jamison, the secretary and treasurer of the P. L. Terry Milling Company, and of Mr. Trout, the president of the bank, sold the twenty-five shares of stock deposited with Terry's note for $2,239.70 for $750, and paid that sum to the bank. It was credited on the $2,239.70 note, and also upon the note of the milling company to the bank. It thus appears very clearly that those payments by Terry and his trustees were not made on account of his liability, as guarantor, but were made on account of Terry's indebtedness to the P. L. Terry Milling Company, and credited thereon, and then credited on the debt of the milling company to the bank.

It follows from what has been said, that the appellant should be charged with the sum of $10,000, the proceeds of the insurance policies, as of January 16, 1899, the date the same was paid to it, and that it should be credited with Terry's note to it

for $5,000, dated May 28, 1896, with legal interest thereon from the time it became due and payable until January 16, 1899; with the sum of $1,128.60, the amount paid by the appellant to the American Deposit and Loan Company, with legal interest thereon from the day of payment until January 16, 1899; with the sum of $1,482, the aggregate amount of the premiums paid by the appellant, with legal interest on the amount of each of said premiums from the date of its payment until January 16, 1899.

The court is further of opinion that the residue of the said $10,000 should be credited on that portion of the indebtedness of the P. L. Terry Milling Company for which P. L. Terry, deceased, was liable as guarantor, as of the 16th day of January, 1899, so far as it may be necessary to pay the same, and that to the extent of such payment the appellee should be subrogated to all the rights and remedies which the appellant may have against the said P. L. Terry Milling Company or its assets, on account of that debt, and if after crediting all these sums upon the said $10,000, any balance thereof should remain in the appellant's hands, it should pay the same over to the appellee, with interest thereon from January 16, 1899, until paid.

The decree complained of will be reversed and set aside, and the cause remanded to the Circuit Court for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed.*