# CHARLESTON.

## CHAMBERS V. GREAT STATE COUNCIL, I. O. R. M.

Submitted September 1, 1915.   Decided September 21, 1915.

1. INSURANCE—*Wills—Assignment of Insurance Policy—Validity.*

   The assignment endorsed on the policy of insurance sued on in this case is not testamentary in character, and for that reason void, as evidence of plaintiff's title to the policy.   (p. 618).

2. SAME—*Life Insurance—Insurable Interest—Assignment of Policy—Wagering Contract.*

   A creditor has an insurable interest in the life of his debtor, and the assignment by the latter to the former of a policy or certificate of insurance in a fraternal insurance society, in consideration of initiation fees and dues paid thereon, and other loans and advancements made to the insured, does not convert the policy into a wagering contract, void as against public policy.   (p. 618).

3. SAME—*Mutual Benefit Insurance—Insurable Interest.*

   This rule of insurable interest is applicable alike to ordinary life insurance policies and to contracts of mutual benefit societies, unless there be something in the contract, constitution or by-laws of the society, or statute law controlling the same, prohibiting it.   (p. 619).

4. SAME—*Mutual Benefit Insurance—Assignment.*

   There is nothing in the contract sued on in this case or in the constitution or by-laws of defendant, nor in the statute law controlling its organization, prohibiting such assignment or change of beneficiaries.   (p. 620).

5. EVIDENCE—*Record Book—Preliminary Proof.*

   The record book of an officer of such fraternal insurance society, which by the terms of the contract is made prima facie evidence of the financial standing of the member and of the standing of his local lodge or tribe, the entries in which were duly proven by such officer to have been made with his knowledge and under his direction in his office, by his private secretary or assistant, is admissible in evidence, although the entry of the items therein be not also proven by such private secretary or assistant.   (p. 621).

6. SAME—*Best and Secondary—Fraternal Insurance.*

   The provisions of the constitution and by-laws of such fraternal society, as to the duties of certain committees and boards constituted thereby, constitute the best evidence thereof, and it is not error to reject oral evidence of witnesses as to what such provisions are.   (p. 622).

7. TRIAL—*Instructions—Refusal.*

   Instructions to the jury which are too general in their terms, and are indefinite and uncertain in their application, and which ignore important issues and facts in the case on which the case may turn, are properly rejected. (p. 623).

8. INSURANCE—*Action on Policy—Waiver—Proof.*

   Where waiver of the terms, conditions and warranties in a policy of insurance, limiting right of recovery thereon, is relied upon, the burden of proving such waiver is upon him who affirms the fact of waiver, and the same must be made out by clear and preponderating evidence. (p. 628).

Error to Circuit Court, Fayette County.

Action by William Chambers, assignee, etc., against the Great State Council, Independent Order of Red Men. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial awarded.*

*J. M. Ellis* and *E. R. French,* for plaintiff in error.

*Dillon & Nuckolls* and *T. L. Sweeney,* for defendant in error.

MILLER, JUDGE:

Plaintiff, as assignee of Glover, sued defendant for the amount of the alleged death benefits accrued under a policy or certificate of membership issued to Glover by defendant, a fraternal insurance corporation, on July 6, 1908.

The original policy sued on was partially burned so that the words and letters at the ends of some of the lines could not be read or deciphered, but enough appears on the paper which, read in connection with the constitution and by-laws, introduced in evidence, and other evidence, substantially proves the contract. It provides in substance and effect, that in consideration of the compliance by Glover with the laws governing the endowment bureau of defendant and his good standing as a member of Standing Rock Tribe, No. 29, at Lanark, defendant agreed to pay, within ninety days after receipt of satisfactory proof of death of said Glover, to the widow of the said Glover, or to his heirs, if living, if not living then to his executors or administrators, as follows: In case of his death during the first year, $50.00; in case of his

death during the second year, $100.00; and in case of his death during the third year, $150.00. And it is specifically stipulated in this contract that the records in the office of the Chief of Records should be prima facie evidence of the good standing of said Glover and of his subordinate tribe· at the time of his death.

The provisions of the constitution and by-laws pertinent to the questions presented are as follows: First, the declaration that by authority of the Great Council of the United States the State Council "hereby creates an Endowment Bureau for the benefit of the families or persons designated by deceased chiefs in good standing in this Order", upon the conditions among others: (a) That all members admitted to a local tribe, and as soon as raised to the rank of chief, shall be entitled to a policy, and upon the payment of fifty cents to the Great Chief of Records, shall receive a policy properly made out and signed by the Great Sachem and Great Chief of Records, &c., and that the tribe shall be required to pay for the policies issued to its members fifty cents each; (b) that every chief (member) in the order shall pay to the endowment bureau, through his tribe, twenty cents per month, in addition to his regular monthly dues; (c) that upon satisfactory proof of the death of a chief (member) in good standing, to be furnished on blanks provided by the State Council, the Great Chief of Records shall draw an order on the Great Keeper of Wampum, signed by the Great Sachem, within ninety days, for the amount to which the beneficiary of such deceased member is entitled by the terms of the policy and the constitution and· by-laws, the by-law specifically providing that such sums shall be "payable to the widow or the legal heir of the deceased"; (d) that it shall be the duty of each tribe, within fifteen suns after the beginning of each Cold Moon, Plant Moon, Buck Moon, and Traveling Moon to forward the amount of wampum due the endowment bureau to the Great Chief of Records, who shall record the same, and forthwith pay over the amount thereof to the Great Keeper of Wampum, taking his receipt therefor, and that he shall furnish to the finance committee every three moons a statement showing the quarter for which such wampum is paid, the names and members· of the tribe paying the same,.

and the amount paid by each tribe, and shall also furnish each tribe with a quarterly statement of the endowment fund; (e) that any tribe failing to forward the amount due from it to the endowment bureau within the specified time shall be immediately notified by the Great Chief of Records, and unless such endowment dues are paid within ten days from the date of mailing such notice the tribe so notified and remaining in default shall be suspended from all benefits under the endowment bureau by the Great Sachem, but may be reinstated by him at any time upon payment of all dues, provided that should a tribe lose by death a member while so suspended, such member shall not be entitled to receive the benefits of the endowment laws; (f) that proof of death shall consist of affidavits of the fact of death, sworn to by attending physician, the undertaker, and one member of the tribe in good standing, of which deceased was a member, and certified by the Sachem and Chief of Records, and further by an officer authorized to administer oaths.

An advisory board is also provided for, to consist of not less than seven members, of which a majority shall be located at the home office, to be appointed by the Great Sachem at each Council meeting of the State, and of which the Great Sachem shall be ex-officio chairman and the Great Chief of Records and the Great Keeper of Wampum, shall be ex-officio members of said board; and which board, it is provided, shall have jurisdiction in all matters pertaining to the endowment department, with power to change the amount of such endowment, the endowment fee, and to make any levy or assessment necessary to the payment of the face value of the policies held by legal beneficiaries, provided, that the action of said advisory board shall not go into effect until approved by the Great State Council.

Besides the general plea of non-assumpsit, the following breaches of the warranties and conditions of the policy sued on and of the terms and provisions thereof and of the constitution and by-laws, are pleaded and relied on by way of defense to the action, viz: First, that the deceased Glover was not at the time of his death a member in good standing in his tribe, because of his failure to pay through his local tribe, or otherwise, to the endowment bureau, the sums

specified for his endowment dues, accrued subsequently to the quarter ending April 1, 1912; second, that deceased and his local tribe had failed, neglected and refused to comply with said by-laws by paying the endowment dues of deceased and others to said Chief of Records, accruing subsequent to April 1, 1912, and that after the ten days notice to said tribe, as provided by the by-laws, and before the death of said Glover, it had been suspended, and said Glover had not been transferred to another tribe in good standing, thereby denying to deceased any and all benefits of said endowment bureau; third, that due and sufficient notice and proofs of decedent's death were not furnished to defendant as required by policy and by-laws of the order; and, fourth, that plaintiff, as assignee, is not a person within the meaning of the contract, and the constitution and by-laws of said order, who is entitled to the benefits of said endowment fund, by assignment of said Glover or otherwise.

To all these special defenses the plaintiff specially replied, denying the facts pleaded in some of them, and as to all alleging that defendant had by its acts and conduct, in the manner specified, waived its right to insist upon the alleged violation of the several provisions of said policy, and of the constitution and by-laws, as defenses to said action.

On the trial the plaintiff recovered a verdict and judgment for one hundred and sixty three dollars and fifty cents, the subject of the writ of error now before us.

Numerous errors are assigned: First, that the alleged assignment of the policy to plaintiff is testamentary in character, and not being proven or provable as a will of deceased, was improperly admitted as evidence of plaintiff's title and right of action on the policy. There is no merit in this point. The assignment was endorsed on the policy, is in good form, duly witnessed by two witnesses, manifestly on a blank form of assignment printed on the back of the policy, and is wholly unlike the paper involved in *Grand Fountain U. O. T. R.* v. *Wilson,* 96 Va. 594, relied upon by plaintiff in error.

The second point is that the court erred in permitting the plaintiff Chambers to give in evidence, as showing consideration for the assignment of the policy to him, and of his in-

surable interest in the life of the deceased, payments of the
initiation fee, doctor's fee for examination, dues, etc., on the
policy, and certain other sums paid the deceased in his life
time, and aggregating more than the face value of the policy.
It is contended that this assignment for these considerations
constituted a wagering policy, that Chambers was without
insurable interest in the life of Glover, and that the assign-
ment was void as against public policy.

In our opinion this proposition is not well founded in law
or fact.  The authorities cited by counsel for the proposition
do not support it.  It is well settled by many authorities,
including those cited by counsel, that a creditor has an in-
surable interest in the life of his·debtor, and that as bene-
ficiary named, or as assignee, he is also entitled to the benefits
of the policy to reimburse him for premiums, dues, etc., ad-
vanced or paid to the insurer to keep the policy alive.
*Woody's Admr.* v. *Schaaf*, 56 S. E. 807; *Cammack* v. *Lewis*,
15 Wall. 643; *Connecticut Mutual Life Ins. Co.* v. *Schaefer*,
94 U. S. 457; *Warnock* v. *Davis*, 104 U. S. 775; *Crotty* v.
*Union Mut. Ins. Co.*, 144 U. S. 621; *First National Bank* v.
*Terry*, 99 Va. 194, 196; *Roller* v. *Moore*, 86 Va. 512; *Long* v.
*Meriden Britannia Co.*, 94 Va. 594; *Beaty* v. *Downing*, 96
Va. 451; *New York Life Ins. Co.* v. *Davis*, 96 Va. 737; *Tate*
v. *Building Association*, 97 Va. 74; 1 Cooley's Briefs on the
Law of Insurance, 301.

And this rule respecting insurable interest is applicable to
mutual benefit societies, and to policies issued by them, unless
there be something in the contract, constitution, or by-laws
of the society or of the statute controlling its organization,
prohibiting it.  1 Bacon on Benefit Societies and Life Insur-
ance, sections 252 and 311; *Pleasants* v. *Locomotive Engineers
Mut. L. & A. Ins. Asso.*, 70 W. Va. 389; *Basye* v. *Adams*, 81 Ky.
368; Niblack on Benefit Societies and Accident Insurance, p.
322, section 165, et seq.  True such insurable interest must
exist at the time of the contract of insurance or at the time
of the assignment thereof to the creditor, or at the time he
is designated by the insured as beneficiary in the policy.
Outside of the payment of the initiation fee, doctor's fee, and
dues, it does not clearly appear when the relation of debtor
and creditor originated, but the policy is dated July 6, 1908,

the assignment May 10, 1910. As Chambers proves the assign-
ment was made to secure him the several sums stipulated,
presumptively the debt existed before the assignment, giving
him an insurable interest, supporting the assignment or
transfer of the policy.

But a question presents itself in this connection, suggested
perhaps by counsel, but not argued, that is, whether there is
anything in the contract of insurance itself or in the con-
stitution and by-laws of the society denying to the insured
the right to assign the policy or change the beneficiary named
therein. Some of the provisions of the constitution and by-
laws do not seem to be harmonious. As the names of the
beneficiaries in the policy seem to have been partially
obliterated by the burning of the edges, and there is no
positive evidence to supply this defect, we must assume that
the policy was made payable substantially in accordance with
this provision of the by-law.

Assuming that the policy by its terms is payable to the
widow, if any, or to the legal heirs or personal representa-
tives of deceased, had Glover, the insured, the power or
authority to assign the policy to plaintiff, or to change the
beneficiary therein, as he undertook to do in this case? As
already shown the declared object of establishing this en-
dowment bureau was ''for the benefit of the families *or
persons designated by deceased chiefs* in good standing in this
Order.'' We find nothing in the constitution and by-laws
of the society, and there is nothing in our statute law, in
terms, prohibiting the assured in a policy of insurance or a
member of a benevolent society from designating as bene-
ficiary persons other than a member of his family, or from
assigning the policy to such other persons with an insurable
interest as a creditor or the like. It substantially appears
from the record that deceased left no widow. Our case of
*Pleasants* v. *Locomotive Engineers Mut. L. & A. Ins. Asso.,
supra,* holds that unless some statute or rule of public policy
controls, restrictions or limitations upon the naming of bene-
ficiaries, contained in the constitution and by-laws, are for the
benefit of the insurer, but that these may be waived.

Had Glover then the right and power under the contract to
assign the policy to plaintiff, or to substitute him for the

beneficiary named in the contract? Nothing in the statute law or in the constitution and by-laws of the society prohibiting it, the law seems to be well settled that the insured, with whom and the society the contract is made, has the right at any time to change the beneficiary in the manner provided by the constitution and by-laws of the society, if there be any provision therein in relation thereto, if none, then in any way by which his purpose to do so may be lawfully manifested, whether that be by assignment of the policy or otherwise; always, however, with this exception, that the beneficiary named may not have acquired some equitable interest in the policy controlling its disposition by the insured, in which event he must consent or join in the transfer. 1 Bacon on Benefit Societies and Life Insurance, sections 305 to 307, inclusive. This authority also holds, section 308, that even where the constitution or by-laws of a society require a particular form or manner of changing the beneficiary, the society may waive even these requirements. See, also, Niblack on Benefit Societies and Accident Insurance, chapter 11, sections 165 to 174, inclusive. While the paper relied upon may not, within these authorities, be strictly an assignment of the policy, we think it may be properly construed as a lawful change of the beneficiary named in the contract, and as constituting legal evidence of the plaintiff's right and title to the benefits accruing under the policy.

The third point we will consider is the rejection of the record in the office of the Chief of Records, showing Glover's standing and the standing of his tribe in the endowment department. This record was offered in connection with the testimony of the witness White, Secretary and Great Chief of Records, who, while proving that the entries made in the book had been made by his wife, his private secretary, proved also that they were made by her in his office and under his personal direction, and that the book offered was the official record, and that it was correct within his personal knowledge. After looking at the book, and without objection, he was permitted to prove orally, the standing of Glover up to March 31st, 1912. But by the terms of the policy Glover agreed that the records of the office of the Chief of Records should be *prima facie* evidence of his standing in the subordinate tribe.

The court seems to have had the view that because the entries in the book were made by the wife, and she was not produced to verify these entries, his evidence was hearsay and the books not competent evidence to go to the jury. But personal knowledge of the fact and of the entry made under his direction made the entry his in fact; his knowledge was represented in the entry, and his evidence was as competent as that of his private secretary to verify the book and make it evidence. The element of personal knowledge of the fact and of the entry is not wanting here. 2 Wigmore on Evidence, section 1530, *et seq.; Pelican Lumber Co.* v. *Johnson,* (Tex.) 98 S. W. 207; *Phillips* v. *United States,* 201 Fed. 259, point 8 of syllabus. We think the book was admissible in connection with this evidence of the witness. It is doubtful, however, whether the plaintiff's interests before the jury were injuriously affected by the absence of the book, as the fact of the deceased's standing at the date of his death was otherwise shown. Moreover, there was no proffer by plaintiff to show what the record in fact would show respecting the standing of Glover.

Fourth, it is complained, (a) that the court below erred in denying to defendant the right to rebut the testimony of Dr. Anderson, with reference to the duties of the finance committee, and (b) in not allowing the witness White to state the provision of the constitution and by-laws with reference to the advisory board, and (c) in refusing to let the same witness state whether or not Standing Rock Tribe had complied with the laws of defendant.

As to the first of these complaints the constitution and by-laws themselves, introduced in evidence, define the duties of the finance committee, and contain also provisions defining the powers and duties of the advisory board, which answer the second complaint. As to the last objection it was rather a question of law for the court than for the witness, under all the facts in evidence, as to whether Standing Rock Tribe had complied with the laws of defendant. We see no error in these rulings of the court.

Moreover, we do not see from the record that Dr. Anderson undertook to state what were the duties of the finance committee; he simply stated what that committee had reported

to the State Council with reference to the Glover or Chambers claim, and that the State Council had approved that report, and directed that the claim be paid to Chambers. Plaintiff did not propose to contradict this evidence. The first question of counsel, objection to which was sustained, was, "Q. Doctor Anderson made a statement here about the duties of the finance committee. Is this the duty of the finance committee to pass upon the endowment laws?" The next was, "Q. I will ask you, does the constitution and by-laws of this order provide for an advisory board to look after the endowment?" As the constitution and by-laws were already in evidence it was incompetent for the witness to prove orally what the duties of this committee and the advisory board were, and we see no error in these rulings of the court.

The remaining questions, involving the several grounds of defense pleaded, the alleged waivers thereof by defendant, and the testimony thereon adduced on the trial, are severally presented by the instructions given and refused at the instance of the parties, the modifications of some of said instructions, and by the motion of the defendant for a new trial. Of the seven instructions asked by the plaintiff, the court rejected numbers 1, 2, and 3, but gave as requested numbers 4, 5, 6, and 7. The four instructions given were excepted to and the giving of them assigned as error here. These instructions are as follows: "(4) The Court further instructs the jury that if they believe from a preponderance of the evidence that the plaintiff has substantially proved his right to recover, as alleged in the declaration, that they should find for the plaintiff. (5) The Court instructs the jury that if they believe from the evidence that Fred Glover assigned either orally or in writing, for value, the policy sued on to the plaintiff, that such assignment is valid. (6) The Court further instructs the jury that if they believe from the evidence that the said Fred Glover had not complied with the rules of the order and that proper proof of death had not been made, yet they have the right to determine from all the evidence whether this was waived by the defendant. (7) The Court instructs the jury that if they believe from the evidence that the defendant, by its agents, waived compliance with the laws of the order on the part of Fred Glover and

W. M. Chambers, then defendant is estopped to set up this non compliance as a defense to this suit.''

Instruction number 4, we think, is too general in its terms, and is too uncertain and indefinite in its application, and that it ignores the issues made on the defenses set up by the defendant. As to instruction number 5, there was no evidence of an oral assignment. The assignment relied upon was in writing. The law of the case could only be·made applicable to the written assignment. Moreover, every assignment of an insurance policy, even for value, is not necessarily valid. As we have seen, it depends on whether or not the assignee at the time of the assignment had an insurable interest in the life of the assured. Instruction number 6, is likewise too general in its terms. It singles out the failure to provide proper proof of death, one of the defenses, ignoring the others, and leaves it to the jury in general terms to determine from all the evidence whether defendant had waived breaches of the rules of the order, instead of submitting to them the questions of fact, which would constitute the waiver, and telling them that if they found the facts to be as supposed, such facts constituted a waiver of the terms and conditions of the policy, and of the rules and laws of the order.

Instruction number 7, is equally vulnerable for its generality. It seems to us that the instruction instead of being couched in such general terms should, by reference to the facts proven and relied upon as waiver, have told the jury' that if they found the facts to be as claimed, these constituted a waiver, and that they should find in accordance, therewith; but the instruction does not do this, and we think, for this reason, it is erroneous and misleading.

Of the eight instructions requested by the defendant, the court gave numbers 1, 5, 6, and 7, and rejected numbers 2, 3, 4, and 8, those rejected being the subject of a bill of exceptions, and of errors assigned here. Those refused were: ''(2) The Court instructs the jury: That if they believe from the evidence that the plaintiff in this action failed to comply with the by-laws and the constitution of the defendant, in giving notice of the death of Fred Glover, then, and in that event, the defendant is not liable, and they should find for the defendant. (3) The Court instructs the jury

that if you believe from the evidence that Fred Glover was not in good standing financially in the endowment department of the defendant at the time of his death, then you should find for the defendant. (4) The Court instructs the jury: That before they can find for the plaintiff in this action, the plaintiff must prove by a preponderance of the evidence that the name written on the policy was intended as the signature of Fred Glover, and that it was written by him; and if they further find that Fred Glover could not write his name, the plaintiff must prove that the signature was made by the direction of Fred Glover in the presence of at least two competent witnesses present at the same time, and that the attesting witnesses subscribed to the writing in the presence of Fred Glover and of each other. (8) The Court instructs the jury that the plaintiff assignee cannot recover in this case because he has not proved that he had an insurable interest in the life of the insured, nor does it so appear anywhere in the evidence adduced in the whole case.'' Instructions numbers 2 and 3, while perhaps propounding correct legal propositions, ignore plaintiff's theory of waiver and the evidence thereon, and were for this reason properly rejected. Instruction number 4 is bad and was properly rejected for the reason that an assignment to be valid requires no such formality as required by the instruction. Instruction number 8 we think is bad because it takes from the jury the question of fact, whether the plaintiff at the time of the assignment was a creditor of deceased, as to which the plaintiff gave evidence to the jury.

Defendant's instructions numbers 5 and 6, alleged modifications of which are complained of, submitted defendant's theories of defense, and told the jury that if they found the facts to be as assumed, respecting the failure of the beneficiary to present proper proofs of death, and decedent's failure to pay dues, and the alleged suspension of decedent's tribe, etc., they should find for defendant, unless they further found that defendant had waived compliance with these conditions of the policy as stated. The complaint is that the court erroneously modified these instructions by adding these conditions. We do not find in the record that objection was made by defendant at the trial to these modifications. Indeed

there is nothing in the record showing that any modifications of these instructions were made by the court. So far as the record shows they were given as requested by the defendant. If modified and given as modified, as alleged, without objection, defendant must be presumed to have acquiesced therein, and it is not now in a position to complain thereof. Moreover, they seem to us to propound the law correctly, unless the conditions attached should have referred specifically to the specific acts of waiver sought to be established by the evidence.

Lastly, defendant complains that the court denied its motion to set aside the verdict and award it a new trial. This point brings up for consideration the entire merits of the case as made by pleadings and proofs, including the alleged errors committed on the trial of the action. But we need not reconsider the points of error already disposed of. The points remaining for consideration are, first, whether as alleged in the several grounds of defense, (a) deceased at the time of his death, because of his failure to pay dues, was not in good standing in his tribe, (b) whether his local tribe at the time of his death had been lawfully suspended, as alleged, and, (c) whether sufficient notice and proofs of death were furnished. It is conceded that Glover died on July 5th, 1912, and was then in arrears for his monthly dues, since April 1, 1912, and that his tribe had fallen off in membership below the constitutional limit of seven, and was liable to suspension on that ground. But it is contended that notwithstanding these conceded facts, deceased had not been in arrears for a period of six months, and plaintiff contends that his tribe had not received notice from the Chief of Records, as provided by the sixth section of the endowment law of the society, and that deceased was not unfinancial in his tribe or order so as to deprive him or his beneficiary of the death benefits of the order.

We do not find in the constitution or by-laws any provisions entitling a member of the endowment department to a grace of six months in which to pay dues. We do find in section 5, of article 16, of the constitution of the tribe, as distinct from the constitution and by-laws of the principal order, that ''When a member shall have been in arrears for six Moons, or their equivalent, and has been notified to pay the same, he

shall be suspended by vote of the Tribe.'' It is perhaps to this provision that reference is made. We cannot interpret the contract of insurance and the endowment law of the order to mean that a member is in good standing with his tribe, according to the terms of the policy, who is in default in the payment of his monthly dues to the endowment fund, and entitled to the benefits of that fund while in that condition. The constitution of the tribe provides for other benefits than endowment benefits, and as we interpret the laws of the society one may continue to be a member of the tribe without the benefits of the endowment fund to which he is in default. However, we have no evidence as to how these provisions of the constitution and by-laws of the order have been interpreted by it, and we may be in error.

But was decedent's tribe in a state of suspension by the Chief of Records at the time of his decease, depriving him and his beneficiary of the benefits of the endowment law? That officer proved positively, and exhibited a copy of his notice, dated June 18, 1912, mailed to the tribe, that he notified them of their arrears in the endowment fund, and that unless such dues were paid on or before the 28th instant, the tribe would stand suspended without further notice. And he proved by his evidence that payment was not made in accordance with this notice and that the records of his office showed the tribe suspended at the time of decedent's death. Three members of this tribe were introduced as witnesses, who testified that neither of them had received the notice. But that it was mailed to the order is positively proven by the testimony of the Great Chief of Records. The sixth section of the endowment law relating to the subject, we think, contemplates the mailing of the notice as full compliance with the law, and as the tribe is the agent of its members to remit the dues when paid, both members and tribe must be presumed to have notice of their default, and the fact of the receipt of the notice from the Great Chief of Records we do not think is a condition precedent to the finality of the suspension. As we have already noticed the contract of insurance makes the records in the office of the Chief of Records prima facie evidence of the good standing not only of the insured but of his subordinate tribe. But it is contended that the evidence shows that the

Great Chief of Records received from individual members of the tribe dues up to the quarter beginning April 1, 1912, with knowledge of the condition of the tribe, as to numbers, etc., and that having done so, deceased and others from whom these payments were received, were entitled to the notice which their tribe was entitled to, and could not be deprived of the benefits of their insurance without actual notice to them.. We do not think this is a fair interpretation of the law of the order. Besides, at the time of receiving the remittance referred to the Great Chief of Records notified the member who remitted the money that the members of the tribe should get together and make one remittance for all, and decrying the practice of sending in the money by piece-meal. This letter is dated May 9th, 1912, and discloses no knowledge on his part that the tribe had fallen below the constitutional number. Our conclusion is that Standing Rock Tribe, No. 29, was in a state of suspension at the date of decedent's death; that decedent was in default of payment of his dues to his tribe, and that unless this default had in some way been waived by defendant the plaintiff cannot recover on the policy. As to the defense of failure to furnish proof of death, we think the evidence clearly shows that proofs of some kind were furnished on blanks provided by defendant. These proofs, whatever they may have been, were evidently in possession of defendant at the time of the trial, and were not introduced in evidence in support of its defense, and we think we must assume that proofs satisfactory to defendant were furnished, and that this defense has not been sustained.

The final question we have then is, did defendant waive the breaches of these conditions and terms of the policy? The only evidence tending to show such waiver, or any waiver by defendant of any of the terms and conditions of the policy is the evidence of Dr. Anderson, who was at the time chairman of the finance committee, and who swears that his committee in a report to the Great State Council recommended payment of the Glover claim, and that this report was adopted by the Council and the money ordered to be paid to plaintiff. The jurisdiction of this committee is challenged, reference being made to the provision of the endowment law, heretofore referred to, giving the advisory board jurisdiction of all matters

pertaining to the endowment bureau, and defendant's contention is that this board had sole jurisdiction of plaintiff's claim. Neither the report of this finance committee nor any minute of the action of the Great State Council thereon are otherwise proven. The witness White, the Great Chief of Records, and a member of said advisory board, swears, that he has no knowledge of such report, or of the action of the Great State Council thereon, and swears that even if said finance committee did make such report it was without effect. He concedes, however, that the Great State Council would have jurisdiction to order plaintiff's claim paid. Why the minutes of the State Council were not produced to prove its action, if any, on this claim is not explained. There is some evidence tending to show that minutes of its proceedings were kept by the proper officer. If the State Council in fact acted favorably on plaintiff's claim and ordered it paid, under the circumstances disclosed in the record, such action we assume would be valid and binding. But the burden rests upon the plaintiff to show such waiver, and in our opinion it has not been fully borne by him. The best evidence of such action has not been produced. It rests solely upon the uncorroborated declarations of one witness, and he the chairman of the finance committee. Where was the report of his committee, and the minutes of the secretary of the Great State Council? Why were they not produced? The burden of full proof was upon the claimant. 3 Cooley's Briefs on the Law of Insurance, 2773, et seq.; 1 Clement on Fire Insurance, 418; *Hutson v. Prudential Insurance Co.,* (Ga.) 50 S. E. 1000; *Stephenson v. Empire Life Ins. Co.,* (Ga.) 76 S. E. 592.

We have already responded to the defense that plaintiff as assignee was not a person having an insurable interest in the life of deceased so as to entitle him to the benefit of the policy sued on. For the errors noted herein, we are of opinion to reverse the judgment and award the defendant a new trial.

*Reversed, and new trial awarded.*