𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WALKER V. PENICK'S EXECUTOR.

### March 21, 1918.

1. LIFE INSURANCE—*Interest of Beneficiary—Case at Bar.*—A policy of life insurance issued on the ten-payment life plan provided that the insured might, upon the surrender of the policy, with the written approval of the president, or vice-president, of the insurance company, change the beneficiary, and also that after the policy had been in force three years, the insurance company would grant, in conformity with its rules, a cash loan, and that from any sum payable under the policy there should be deducted the indebtedness of the insured or beneficiary to the company "on account of this contract or otherwise." The insured paid the premiums in advance for the first seven years the policy ran out of his individual funds. But for each of the eighth, ninth and tenth years, he borrowed from the company the amount necessary to pay the premium for the ensuing year and the interest in advance for one year on his indebtedness for such loans. And after the last loan the insured executed to the company a note in which all loans from the company were consolidated. The note provided that it should be a first lien on the policy. After the death of the insured, the amount of the policy, less the amount of the note given for loans on the policy, was paid to the beneficiary.

 *Held:* That the beneficiary was not entitled to recover in an action of assumpsit against the executor of the insured, the amount of the note as a debt against the estate which had been paid out of her property.

2. LIFE INSURANCE—*Interest of Beneficiary—Case at Bar.*—The beneficiary in a life insurance policy is not entitled to recover from the estate of the insured—which is solvent and more than sufficient to discharge all obligations of the estate, including bequests made in insured's will—the amount of a loan obtained by the insured from the insurer on the policy as collateral security and under the provisions contained therein, which amount was used by the insured in the payment of premiums due on the policy and interest on the loan, and which was deducted by the insurance company in a settlement under the policy with the beneficiary.

3. EXECUTORS AND ADMINISTRATORS—*Order of Payment of Debts of Decedent.*—Where creditors will not be prejudiced thereby, every man has the right, by act *inter vivos* or by will, to appropriate his property to the payment of his debts in any order he may see fit. While, ordinarily, personal estate is the primary fund for the payment of the debts of a decedent, he may change that order, if he pleases, and the law will generally recognize and enforce it.

4. LIFE INSURANCE—*Beneficiaries—Case at Bar.*—In the instant case the policy provided for the payment of $10,000 to the beneficiary, upon proper proof of the death of the insured, but this promise was made expressly "subject to all the requirements, privileges and provisions stated" in the policy, one of which provisions was that if any loan should be made to the insured, the amount thereof *"shall be deducted"* from "any sum payable hereunder." The designation of the plaintiff as beneficiary in the policy, gave her the right, if there was no change in the beneficiary, to whatever was payable on the policy, according to its terms, and nothing more. Her right to recover on the policy accrued at the death of the insured, and she was then entitled to the policy, or its proceeds. Her designation as beneficiary constituted a gift from the insured, and was never intended to, and did not, create any liability upon the donor, or his estate. This gift became effectual on the death of the donor, and consisted of whatever sum was demandable of the company at that time.

5. LIFE INSURANCE—*Indebtedness of Insured to Company—Interest of Beneficiary—Case at Bar.*—Under the terms of the policy, the company itself could not have enforced the payment of the note, after the death of the insured, out of any other fund than that pointed out by the policy as the primary fund for the payment thereof. At the death of the insured, the net sum due on the policy was the extent of the liability of the company by reason of the policy, and, under its terms, providing for the deduction of the note, that sum was all the beneficiary was entitled to receive. As she has received that sum, no part of her estate was ever applied to the payment of the note.

Error to a judgment of the Circuit Court of Halifax county, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

84

The opinion states the case.

*Easley & Bouldin* and *McGuire, Riely, Bryan & Eggleston,* for the plaintiff in error.

*John Martin, Samuel L. Adams* and *Clifton H. Penick,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

On June 7, 1900, Bishop Clifton C. Penick insured his life in the Fidelity Mutual Life Insurance Company of Philadelphia for the sum of ten thousand dollars, and his daughter, the plaintiff in error, was named as the beneficiary in the policy. The policy was issued on the ten-payment life plan, which required ten annual payments or premiums of $954.40 each to be paid in advance on June 1st, of each year. The policy, among other provisions, contained the following, which are pertinent to the questions at issue: (1) "The insured, with the written approval of the president, or vice-president, may, upon the surrender of this policy, change the beneficiary;" (2) "After this policy shall have been in force three full years, the company, within sixty days after written application, will grant, in conformity with the rules then in force, a cash loan, with interest in advance at a rate not exceeding six per cent. per annum upon payment of the premium for the ensuing year, of ten times the amount stated in the table below between the parallel red lines; provided always, that the total sum loaned shall not exceed the reserve at the end of the year to which the premiums are fully paid;" and (3) "from any sum payable hereunder there shall be deducted the unpaid portion of the year's premium, if any, and the indebtedness of the insured or beneficiary to the company on account of this contract or otherwise." The insured paid the premiums

in advance for the first seven years the policy ran out of his individual funds. For each of the eighth, ninth and tenth years, he borrowed from the company the amount of money necessary to pay the premium for the ensuing year and the interest in advance for one year on his indebtedness for such loans. The last loan was made May 29, 1909, and at that time the insured executed to the company a note in which all loans from the company are consolidated. This note, which is also signed by the plaintiff in error, was as follows:

"$3,175.30.                              May 29, 1909.

"I have this day received from the Fidelity Mutual Life Insurance Company the sum of thirty-one hundred and seventy-five and 30/100 dollars, as a loan on policy No. 107146, for $10,000 issued June 7, 1900, by said company on the life of Charles C. Penick, and in consideration of which I hereby promise to pay to the Fidelity Mutual Life Insurance Company, at its head office in the city of Philadelphia, Pa., the said sum of thirty-one hundred and seventy-five and 30/100 dollars, with interest thereon from June 1, 1909, until paid, at the rate of five per cent, per annum, to be paid annually in advance on the anniversary of said policy. With this note is delivered to the company said policy No. 107146, and hereby agreed that this note shall be a first lien against same.

"It is further agreed that if interest on this note or any premium on said policy be not paid when due, said policy shall be *ipso facto* null and void, and all liability of the said company by reason of same shall thereupon cease and determine. Said company is thereupon authorized, without notice to the undersigned to ascertain the cash value of said policy, according to its rules for the purchase of policies, and apply the same, first to the payment of this note and any interest or costs that may be due hereon; second to the payment of any unpaid premium note or other obli-

gation; third to the payment of any other indebtedness of the maker or makers hereof to said company. The residue of said cash value, if any, shall then be applied by said company (at its option) to the purchase of non-participating paid-up or extended insurance (payable as the said policy is payable) for such sum or for such period of time as the said residue will purchase at the then age of the insured, or said company may, at its option, pay said residue to the member in cash, which shall be in lieu of all other benefits.

"It is further expressly agreed that if the said policy be surrendered all the values mentioned therein shall be reduced or diminished in the ratio that the amount of this note and *other* all other loans or indebtedness on said policy bears to the total cash value thereof, any law or statute to the contrary notwithstanding.

"Signed, sealed and delivered in presence of us.

C. M. YOUNG.

MARY H. PENICK.

C. C. PENICK (L. S.)

(Insured)

MARY CLIFTON PENICK (L. S.)

Beneficiary."

The whole amount borrowed was used by the insured in the payment of premiums due on the policy, and interest on the loans. The interest on this loan was regularly paid by the insured, in advance, up to the time of his death, which occurred on April 18, 1914. The policy became paid up on payment of the premium on June 1, 1909. No change was made directly in the beneficiary named in the policy. The estate of the insured was more than sufficient to discharge all of his obligations, including bequests made in his will.

After the death of Bishop Penick, the amount of the policy, less the amount of the note given for loans on the policy, to-wit: the sum of $7,310.85, was paid to the plain-

tiff in error, and she brought this action of assumpsit against the executor of the insured to recover the amount of said note, to-wit, $3,175.30, as a debt against his estate which had been paid out of her property. The facts were agreed, and the case submitted to the judge of the trial court, without the intervention of a jury, and he rendered judgment for the defendant. To that judgment this writ of error was awarded.

The question presented for decision in this case is stated by counsel for the plaintiff in error as follows: "Whether the beneficiary in a life insurance policy is entitled to recover from the estate of the insured—which is solvent and more than sufficient to discharge all obligations of the estate, including bequests made in insured's will—the amount of a loan obtained by the insured from the insurer on the policy as collateral security and under the provisions contained therein, which amount was used by the insured in the payment of premiums due on the policy and interest on the loan, and which was deducted by the insurance company in a settlement under the policy with the beneficiary."

It is said that the precise question here involved has not been passed upon in this, or any other, jurisdiction. We are free, therefore, to answer it on principle as seems to be fair and just.

In some jurisdictions it is held that where the insured has the arbitrary right to change the beneficiary at will, the beneficiary has no estate of any kind in the policy during the life of the insured, but a mere expectancy, quite similar to that of a legatee during the life of the testator. But if no such change is made, then upon the death of the insured the right of the beneficiary becomes fixed and vested. *Freund* v. *Freund*, 218 Ill. 189, 75 N. E. 925, 109 Am. St. Rep. 283; Vance on Insurance, page 399, and cases cited. In other jurisdictions it is held that the beneficiary has a vested interest in the policy liable to be defeated by

a change of the beneficiary. *Hopkins* v. *Hopkins,* 92 Ky. 324, 327, 17 S. W. 864; *Indiana Nat. Life Ins. Co.* v. *Mc-Ginnis* (Ind.)., 99 N. E. 756; *Tyler* v. *Treasurer,* 226 (Mass.) 306, 115 N. E. 300; *Holder* v. *Prudential Ins. Co.,* 77 S. C. 299, 57 S. E. 853. Which of these views is correct it is unnecessary for us to decide. The question for our consideration is what amount under the facts of this case, is the beneficiary named in the policy entitled to receive. Is it the gross value of the policy, or its value after deducting the loan note?

The theory of the plaintiff's case is that the loan note evidenced a debt owing by the insured for which she was not bound at all, or, if bound, then only as surety or *quasi* surety; that the gross value of the policy was her property, by reason of the fact that she was the beneficiary named in the policy; and that this property of hers has been taken to pay the debt of the assured, and that by analogy, at least, to the exoneration of a specific legacy, or the subrogation of a surety, she is entitled to recover from the executor of the insured the amount of the loan note which was deducted from the policy on the settlement made with her.

The policy of insurance was a contract between the insured and the insurer which they could alter or amend at pleasure, without consulting anyone; and, while it is true that the policy declares how the beneficiary may be changed, it was entirely competent for the parties to waive that method and substitute any other that was mutually agreeable to them, and if the company chose by word or act to permit the insured to substitute himself, in whole or in part, as the beneficiary under the policy, no complaint thereof could be made by the beneficiary named in the policy. The transaction, in the instant case, amounted to a designation by the insured, with the consent of the company, of himself or of his estate, as the beneficiary of the policy to the extent of the loan.

Furthermore, where creditors will not be prejudiced thereby, every man has the right, by act *intervivos* or by will, to appropriate his property to the payment of his debts in any order he may see fit. While, ordinarily, personal estate is the primary fund for the payment of the debts of a decedent, he may change that order, if he pleases, and the law will generally recognize and enforce it. In the instant case, the policy and the loan were not wholly separate and distinct transactions, for when the policy was issued it provided for the loan, and a limit upon the amount thereof, and the insured, with the consent of the insurer, provided the order in which his estate should be appropriated to the payment of such loan. The policy declares that from any amount payable thereunder, there *shall be* deducted the indebtedness of the assured to the company. This was not a mere privilege reserved by the company for its own protection. It was a stipulation between the two parties to the contract in which each was interested, and which they might waive, if they so elected, but from which neither could recede without the consent of the other. Nor did it merely create a lien on the policy. The note itself stipulated that it "shall be a first lien" on the policy, but the provision of the policy went further and *required* the company to deduct the note "from any sum payable hereunder." The loan was a compulsory loan to the assured under the terms of his contract, and from the time it was made he knew that there was, under the terms of his contract, practically no personal responsibility upon him, for, if the company continued solvent, upon his death, the company was obliged to deduct the loan from the policy. It is not probable that he ever conceived the idea that he was creating a debt to be paid otherwise than out of the proceeds of the policy.

It has been very earnestly argued before us that the company, in making this loan, was not in any different position from any other lender of money on collateral se-

curity, and *Stratton* v. *New York Life Ins. Co.*, 115 Va. 257, 78 S. E. 636, is cited in support of the position. Aside from the fact that the facts of that case are essentially unlike those in the instant case, and the questions involved wholly different, the utmost that can be claimed for the meaning of the language used in that case is that an insurance company, in making a loan on its policy, does not occupy any different position from any other lender of money *upon like security* and a *similar contract.* The loan in the instant case was compulsory. The insurance company was compelled to make it under the terms of its contract. It could not decline. In the language of the facts agreed, "all of these loans were granted by the company because of the obligation imposed upon it to do so by the policy." Not only so, but the loan was a continuing loan. Within the limits prescribed by the policy (and the loan here was within those limits) the assured had the right to demand the loan during the life of the policy. The company recognized this right and made the loan. Having made the loan, it could not call it in, as long as the interest and premiums were kept paid up, because the policy gave the right to demand the loan. Not only was the loan compulsory and continuing, but the security pledged was the company's own obligation and the method of payment pointed out. It may be truly said, therefore, that the insurance company was not in any different position from any other lender of money *under like conditions.*

The policy provides for the payment of $10,000 to the beneficiary, upon proper proof of the death of the insured, but this promise is made expressly "subject to all the requirements, privileges and provisions stated" in the policy, one of which provisions is that if any loan shall be made to the insured, the amount thereof *"shall be deducted"* from "any sum payable hereunder." The designation of the plaintiff as beneficiary in the policy gave her the right, if

there was no change in the beneficiary, to whatever was payable on the policy, according to its terms, and nothing more. Her right to recover on the policy accrued at the death of the insured, and she was then entitled to the policy, or its proceeds. Her designation as beneficiary constituted a gift from the insured, and was never intended to, and did not, create any liability upon the donor, or his estate. This gift became effectual on the death of the donor, and consisted of whatever sum was demandable of the company at that time. Under the terms of the policy, the company itself could not have enforced the payment of this note, after the death of the insured, out of any other fund than that pointed out by the policy as the primary fund for the payment thereof. At the death of the insured, the net sum due on the policy was the extent of the liability of the company by reason of the policy, and, under its terms, providing for the deduction of the note, that sum was all the beneficiary was entitled to receive. As she has received that sum, no part of her estate was ever applied to the payment of the note.

Upon the whole case, we are of opinion that the insured created the proceeds of the policy on his life the primary fund for the payment of the loan note secured by the policy; that to this extent he, with the assent of the insurance company, designated himself as the beneficiary under said policy; that the designation of the plaintiff as beneficiary in the policy only became effective at the death of the insured; that such designation, becoming thus effective, constituted a gift to the beneficiary of only the net amount recoverable on the policy at the death of the insured; and that there is not now any liability upon his estate for the amount of said loan note. Under this view of the case, no question of exoneration or subrogation can arise.

We have not deemed it necessary to make any reference to the will of Bishop Penick, though he refers to his insurance

85

policies in his will, as we are informed that the construction thereof is involved in litigation now pending in the circuit court, and there is ample in the record to enable us to arrive at a correct conclusion, without making such reference.

*Affirmed.*