MIMS HOTEL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19327. Promulgated December 8, 1949.

Richard G. Herndon, Esq., for the petitioner.
Paul E. Waring, Esq., for the respondent.

904

OPINION.

Johnson, *Judge*: Upon John W. Mims' death in 1939 Shenandoah applied to the payment of petitioner's bonded indebtedness the $50,000 payable under the policy of insurance issued by it on his life. Petitioner charges error in the Commissioner's refusal to include the $50,000 in its equity invested capital for computation of the excess profits credit for the fiscal year 1945. By section 718 (a), Internal Revenue Code, equity invested capital is defined to comprise:

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. * * *

Petitioner contends that when Shenandoah applied the policy proceeds to its debt, it:

\* \* \* received the benefit of the surety's (John W. Mims) property and became liable to the executors or administrators of John W. Mims for the proceeds of the policy so applied to its benefit. \* \* \*

and, as the estate's claim against petitioner for reimbursement was relinquished without consideration, such relinquishment "constituted property paid in as donated or paid in surplus for the purpose of determining petitioner's equity invested capital under Section 718 \* \* \*." In case no relinquishment or forgiveness of the claim be found, petitioner argues in the alternative that the $50,000 was equity borrowed capital within the meaning of section 719.

If stockholders forgive a debt due them from their corporation under circumstances showing a purpose on their part to make an additional contribution to the corporation's capital and thereby increase their investment, the amount of the canceled debt has been recognized as an addition to invested capital. A. R. R. 678, 5 C. B. 290; *The Parisian*, 2 B. T. A. 415; *Cohn-Goodman Co.*, 7 B. T. A. 475; *Charles L. L'Hommedieu & Sons Co.*, 6 B. T. A. 41. This principle was more recently reiterated in *Liberty Mirror Works*, 3 T. C. 1018. Petitioner invokes it as here applicable on the theory that John W. Mims was the owner of the insurance policy during his lifetime; his estate was the designated beneficiary under the policy, and as such beneficiary, was entitled to the $50,000. Since the policy was held by Shenandoah merely as collateral for petitioner's debt, petitioner became liable to decedent's estate for the amount of the proceeds used to discharge that debt.

In support of this view petitioner relies on *Tate* v. *Commercial Bldg. Assn.*, 97 Va. 74; 33 S. E. 382. There, as here, the stockholder of a corporation took out a policy of insurance on his life which he assigned as collateral to secure a loan of the corporation from the insurance company. Upon the insured's death the policy proceeds were applied in payment of the debt, and an assignee of the policy brought suit against the corporation for the amount of the proceeds. The assignee's claim was sustained on the ground that the corporation would "have become liable to Wrenn's [the insured's] estate for the amount of the policy, if he had not assigned it in his lifetime to Tate." But in so holding, the court took note that Tate:

\* \* \* acquired the policy of Wrenn, subject to the rights of the insurance company to apply the proceeds of the policy to the debt of the association, but with the right, if so applied, to claim the amount from the association, less such sum as might be due to it for premiums paid for Wrenn on the policy. \* \* \*

By the terms of the assignment here considered Mims transferred to Shenandoah "all right, title and interest" in the policy, "including

the right to surrender," and did so under a written agreement that in the event of death the policy proceeds were "to be applied to the liquidation of the loan." While true, as petitioner contends, that an assignment, absolute upon its face, is still to be regarded as collateral security if the parties so intended, *Eichelberger* v. *Mutual Life Ins. Co. of New York*, 59 Fed. Supp. 852; *First Nat. Bank of Roanoke* v. *Speece*, 99 Va. 194; 37 S. E. 843, it is equally true that an insured's intentions are the controlling factor in determining whether or not the designated beneficiary of a pledged policy becomes the creditor's subrogee if the policy proceeds are used to satisfy the debt. In *Smith* v. *Coleman*, 184 Va. 259; 35 S. E. (2d) 107, it was found that the insured did not intend that proceeds of his pledged policy be used to pay the debt if there was no default, and accordingly the court held the designated beneficiary entitled to recover from the insured's estate the amount of proceeds actually applied to the debt. The court, however, was careful to stress that the insured could have defeated the beneficiary's expectancy by surrendering the policy for cash value, by designating the pledgee bank as beneficiary *pro tanto:*

\* \* \* or he could have made the proceeds of the insurance policy a primary fund out of which to discharge his indebtedness. The insured exercised none of these rights. He simply assigned the policy \* \* \* as collateral security to pay an obligation \* \* \*.

In reaching its decision, the court distinguished *Walker* v. *Penick's Executor*, 122 Va. 664; 95 S. E. 428, wherein the insured had pledged his policy with the issuing insurance company for a loan from it, with the stipulation that the amount of the insured's indebtedness be deducted from any sum payable under the policy. After the insured's death the company paid to his daughter, the designated beneficiary, only the amount due under the policy above the amount applied by it in satisfaction of the debt. The daughter sued the insured's estate, which was solvent, for the amount so applied. The court rejected her claim, saying:

\* \* \* the insured created the proceeds of the policy on his life the primary fund for the payment of the loan note secured by the policy \* \* \*. Under this view of the case, no question of exoneration or subrogation can arise.

We are of opinion that John W. Mims likewise intended that policy proceeds constitute a "primary fund" for payment of petitioner's loan. From the attendant circumstances it is manifest that his motive in applying for the policy was to meet a condition which Shenandoah imposed as a prerequisite to making petitioner a loan. It was agreed in advance not merely that the policy would be pledged as security, but further that the proceeds would "be applied to the liquidation of the loan." The policies on the lives of both brothers were taken out for petitioner's benefit; petitioner paid the premiums; it carried the poli-

cies on its books as assets at their cash surrender value; and when John W. Mims died, it constructively received $50,000 by application of the policy proceeds to its debt. During his lifetime John W. Mims paid nothing for the policy, and he had no rights over it inherent in an owner. As a matter of form, his estate was designated beneficiary, but before the policy was even issued he was under contract to direct that its proceeds be applied to petitioner's loan, and immediately upon issuance be assigned "all right, title and interest therein" to Shenandoah as collateral. There was never a time when John W. Mims was free to treat the policy as his own property, he never paid anything for it, and upon his death his estate had no claim against Shenandoah, because the proceeds were expressly applicable to the loan—not applicable when and if petitioner should be in default.

Petitioner suggests that the premiums which it paid were "either additional compensation to John W. Mims or a gift to him." We consider the attendant circumstances more consonant with the view that the policy was an asset of petitioner, as it was in fact recorded and recognized on petitioner's books, and that in paying the premiums petitioner acquired an asset from which it derived $50,000 upon John W. Mims' death. As insurance proceeds, the amount constituted tax-exempt income to petitioner, section 22 (b) (1), not money or property paid in by Mims or his estate as a contribution to capital. We hold that the Commissioner correctly excluded it from petitioner's equity invested capital in computing the excess profits credit.

In a second assignment petitioner charges error in the disallowance of $2,094.40 claimed as an expense deduction for the fiscal year 1944. It is established that this amount was expended chiefly on the purchase of slip covers for hotel furniture and to some extent on reupholstering and repairs. There is testimony by Henry T. Mims that in the Pittsburgh hotels which he managed slip covers are usually replaced after two years of use and that petitioner's repaired furniture, already fully depreciated, was too worn in fiscal 1944 for more than four years' use. It appears that the covers and furniture were still in use, although much worn, when petitioner sold them in 1948, together with many other assets. As the witness refuted that prospective use of the improvements purchased by the $2,094.40 was less than one year, petitioner properly concedes that the amount is not deductible as an expense. It contends instead that a proper portion should be allowed for depreciation on the basis of a four-year life. We have found this term supported by the evidence, and hold accordingly that petitioner is entitled to a depreciation deduction computed on that basis.

*Decision will be entered under Rule 50.*