# Richmond.

## TATE v. COMMERCIAL BUILDING ASSOCIATION AND OTHERS.

### APRIL 6, 1899.

1. INSURANCE—*Insurable Interest—Building Association.*—A Building Association has no insurable interest in the life of a member who is in no wise indebted to it; and the fact that the member becomes surety for the Association does not create an insurable interest.

2. INSURANCE—*Insurable Interest—Advancing Premiums.*—If a life policy, lawfully effected, be assigned to one whose only interest is the amount of premiums advanced, the assignee can only retain so much of the insurance money collected as will be necessary to reimburse him for the premiums paid, expenses incurred, and interest thereon.

3. INSURANCE—*Receipt of Proceeds of Policy—Lack of Insurable Interest—Liability to Representative or Assignee of Assured—Estoppel.*—One who receives and accepts the benefit of a policy of insurance on the life of a third person in whose life he has no insurable interest is liable to the representative or assignee of the assured for the sum so received, less premiums and expenses paid, if any, and such liability is not affected by the fact that there was a prior contract, without consideration, to effect such insurance. The prior contract was void as against public policy, and a void contract cannot defeat a lawful right.

4. CONTRACTS—*Illegality—In Pari Delicto.*—One who has failed to carry out an unlawful contract, and has entered into a different contract which is in all respects legal, cannot be defeated in an action on the valid contract on the ground that he was *in pari delicto* with the defendant in the first contract.

5. CONTRACTS—*Illegality—Public Policy—In Pari Delicto.*—If an agreement is not intrinsically immoral or evil, and involves no fraud or deception upon any one, but is condemned by the law simply because contrary to public policy, the maxim *in pari delicto* is not

inflexibly applied, but the court will consider whether public policy will be promoted and like agreements discouraged by enforcing or avoiding the agreement, and if the policy of the law will be advanced by granting relief, it will be given, otherwise not.

6. INSURANCE—*Insurable Interest—Advancing Premiums.*—In the absence of an insurable interest, a policy of insurance on the life of another is contrary to public policy, and cannot be enforced by the beneficiary beyond the amount paid by him for premiums, expenses, and interest thereon, whether the policy be payable directly to such beneficiary, or to the assured, and be by him assigned to such beneficiary.

7. INSURANCE—*Insurable Interest—Assignment of Policy by Surety—Right as Against Principal.*—If a policy of life insurance, lawfully effected, be assigned by the assured as collateral for a debt for which he is a mere surety, and upon his death the amount of insurance be applied towards the payment of the debt, the personal representative or subsequent assignee of the assured may recover of the principal debtor, in the absence of an insurable interest in him, the amount received on such policy less premiums and expenses paid by him, although the policy may have been issued at his instance, and the premiums advanced by him.

8. CORPORATIONS CREATED BY COURTS—*Preferences.*—The confession of a judgment for an antecedent debt by a corporation chartered by a court is an active act on the part of the corporation to give preference to that creditor, and the judgment enures ratably to the benefit of all the existing creditors of such corporation.

Appeal from a decree of the Circuit Court of the city of Lynchburg pronounced May 13, 1897, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants, the object of which suit was, amongst other things, to claim the benefit of a judgment confessed by the Commercial Building Fund Association, and to enforce sundry claims against said Association.

*Reversed.*

The opinion states the case.

*Caskie & Coleman, J. H. Lewis* and *J. R. Henry*, for the appellant.

*Lee & Howard* and *Harrison & Long,* for the appellees.

RIELY, J., delivered the opinion of the court.

In the year 1891 the Commercial Building Association, (a corporation,) applied to the Maryland Life Insurance Company for a loan of $12,000, which the latter agreed to make upon certain conditions. It required that the Association execute its bond for the amount of the loan, and that the same be signed by its stockholders as sureties. It also required that the Association secure the bond by deed of trust on ninety-four of its lots, and, as a further security for the loan, that it insure the lives of three of its youngest members in the sum of $20,000. The evidence establishes that the Association, in compliance with this last requirement, entered into a verbal agreement with W. H. Wrenn, B. E. Hughes, and J. D. Tate, the appellant, that they take out policies of insurance upon their lives for its benefit in the Maryland Life Insurance Company, aggregating the required amount, upon which the Association would pay the premiums.

The evidence further shows that Wrenn, Hughes, and Tate insured their lives for the specified sum, but that, in doing so, they did not take out the insurance for the benefit of the Association but each for his own benefit, and then assigned the policies to the Insurance Company, as additional collateral security for the said loan. This variance from the agreement did not become known to the Association, or to any of the other members until after the death of Wrenn, when the appellant claimed to be entitled as assignee of Wrenn to the proceeds of his policy, subject, however, to the right of the Insurance Company under the prior assignment of the policy to it by Wrenn as collateral security for the loan to the Commercial Building Association.

The Insurance Company paid the policy by applying its proceeds as a credit on the debt owing to it by the Association.

This suit was brought by Tate to recover from the Association

the amount of the policy, less the indebtedness of Wrenn to it
for premiums paid, upon the ground that the proceeds of the
policy had been applied by the Insurance Company, by virtue
of the assignment from Wrenn, to its debt against the Associa-
tion; and also to recover the amount of contributions by Tate to
pay his proportionate part of assessments made by the Association
against the members to meet the premiums on the policies, and
the interest on the debt to the Insurance Company. Tate was
the Secretary of the Association and apportioned the assessments
among the members, including himself, and paid his proportion-
ate part of them up to the death of Wrenn, but thereafter refused
to do so.

When the agreement was made that Wrenn should take out
the insurance on his life for the benefit of the Association, he
was not indebted to it as a stockholder or otherwise, and did
not thereafter become indebted to it, except for the premiums
paid by it on his policy. The Association clearly had no insur-
able interest in his life.

In *Warnock* v. *Davis*, 104 U. S. 775, Mr. Justice Field said:
" It is not easy to define with precision what will in all cases
constitute an insurable interest, so as to take the contract out
of the class of wager policies. It may be stated generally, how-
ever, to be such an interest, arising from the relations of the
party obtaining the insurance, either as creditor of or surety for
the assured, or from the ties of blood or marriage to him, as will
justify a reasonable expectation of advantage or benefit from
the continuance of his life." See also Richardson Insurance,
sec. 27; 1 May on Insurance, sec. 102a; *Life Insurance Co.* v.
*Luchs*, 108 U. S. 498; and *Roller* v. *Moore*, 86 Va. 312.

If the agreement had been complied with by Wrenn, and he
had taken out the insurance on his life for the benefit of the
Association, the policy would have been invalid. The Asso-
ciation could not have recovered from the Insurance Company
upon the policy, certainly not beyond the premiums paid, if

indeed at all.  An assignee of a policy having no insurable inter-
est in the life of the insured can only retain so much of the pro-
ceeds, where the insurance was lawfully effected, as is necessary
to reimburse him for premiums paid, expenses incurred, and
interest thereon.   *Roller* v. *Moore, supra; Long, trustee,* v.
*Meridian Britannia Company,* 94 Va. 594; *Beatty* v. *Downing,*
96 Va. 451; and *New York Life Ins. Co.* v. *Davis,* 96 Va. 737.
*A fortiore,* the Association, having no insurable interest in the
life of Wrenn, could not occupy any better position, if he had
carried out the unlawful agreement and insured his life for its
benefit instead of his own.

The agreement that the insurance should be effected by Wrenn
for the benefit of the Association was contrary to public policy,
and invalid.  Wrenn did not keep the unlawful agreement, but
took out the insurance for his own benefit, which was wholly
lawful.  He then assigned the policy to the Insurance Company
as collateral security for the debt due to it by the Association.
Upon the death of Wrenn, the Insurance Company paid the
policy by crediting the amount on the debt the Association
owed it, and for which it held the policy by assignment as col-
lateral security.   The Association received and accepted the
benefit of the policy.  It would, therefore, have become liable to
Wrenn's estate for the amount of the policy if he had not assigned
it in his lifetime to Tate.  The latter, as assignee of Wrenn,
is clothed with all his rights.  The Association can make no
defence against Tate that it could not have made against Wrenn.
It would have had no lawful ground of complaint against Wrenn
for not taking out the policy for its benefit, and can have none
against Tate.  An agreement between two persons that one of
them shall make a contract with a third person for the benefit
of the other, which contract would be unlawful, cannot con-
stitute an estoppel to a claim against the intended beneficiary
who has received from such third person the fruits of a lawful
contract substituted for that which would have been unlawful.

An unlawful agreement cannot defeat a lawful right. A contract which is void as being against public policy cannot create an estoppel, if indeed it has vitality for any purpose.

The maxim, "*in pari delicto potior est conditio defendentis*," was also invoked by the appellee to defeat a recovery by the complainant. Wrenn, as we have seen, did not carry out the unlawful agreement and insure his life for the benefit of the Association, but took out the policy for his own benefit. The insurance effected was in all respects a valid contract, and he cannot be considered to be *in pari delicto*, but if he had performed the agreement and taken out the policy for the benefit of the Association, the agreement was not of that kind with respect to which courts fold their hands and refuse to interfere. *Warnock* v. *Davis*, 104 U. S. 775.

The agreement was not intrinsically immoral or evil. No fraud or deception upon any one was designed by the agreement. Its execution involved no moral turpitude. It was simply condemned by the law because contrary to the interests of society. In such case, the maxim, *in pari delicto*, it not inflexibly applied, but the court will consider whether public policy will be promoted and like agreements be discouraged by enforcing or avoiding the agreement, and if the policy of the law will be advanced by granting relief, it will be given. Pomeroy's Eq. J., secs. 403, 941; 1 Story's Eq. J., sec. 298; *Starke* v. *Littlepage*, 4 Rand. 368; and *Cardwell* v. *Kelly*, 95 Va. 570.

To allow any one to retain the proceeds of a policy of insurance, if the insurance company chose voluntarily to pay it, which was effected for his benefit upon the life of another, in which life he had no insurable interest, whether the policy was issued upon the life of the insured directly for such beneficiary, or for the benefit of the insured and then assigned by him to the beneficiary, would encourage speculation upon the chances of human life, with a direct interest in its early termination, contrary to the public interest, and in contravention of the policy of the law.

The denial of all right in the beneficiary to retain in such case more of the proceeds of the policy of insurance than is necessary to reimburse him for premiums paid and expenses incurred dissipates all hope of profit and removes the temptation to speculate in insurance upon human life.

In *Cammack* v. *Lewis*, 15 Wall. 643, Lewis procured, at Cammack's suggestion, a policy of insurance on his life for $3,000. Cammack paid the premium, and immediately after the policy was issued, Lewis executed his note to Cammack for $3,000, for which there was no consideration, and assigned the policy to him in absolute terms. Lewis at the time owed Cammack only $70. He died seven months after taking out the policy, and Cammack collected it. In an action against him by Lewis' administratrix, it was held that she was entitled to recover the proceeds of the policy, subject only to the extent of Lewis' indebtedness to Cammack, including the amount of the premium he had paid on the policy.

In *Warnock* v. *Davis*, 104 U. S. 775, the plaintiff's intestate, on applying for a policy of insurance on his life, entered into an agreement with a Trust Association, whereby the latter was to pay all fees and assessments on the policy and receive nine-tenths of the amount due thereon at the death of the insured. On receipt of the policy, he assigned it to the Trust Association, but reserving a one-tenth interest, which he directed should be paid to his wife. Upon the death of the insured, the Association collected the policy, paid to his widow one-tenth thereof less certain sums due under the agreement, and retained the residue. Suit was brought against the Association by the administrator of the insured to recover the residue of the money it had received on the policy. It was held, the case of *Cammack* v. *Lewis*, *supra*, being cited and approved, that the plaintiff was entitled to recover from the Association the money it had collected on the policy with interest thereon, less the sums advanced by it in payment of fees and assessments.

Tate, by the assignment, acquired the policy of Wrenn, subject to the rights of the insurance company to apply the proceeds of the policy to the debt of the Association, but with the right, if so applied, to claim the amount from the Association, less such sum as might be due to it for premiums paid for Wrenn on the policy. If the policy had been taken out by Wrenn directly for the benefit of the Association according to the agreement, it would not have had any right to the proceeds beyond the amount of the premiums it had paid, if indeed to that extent; and it has, as is conceded, the right to claim out of the proceeds as against Tate the amount of the premiums so paid. So that Tate, in taking from Wrenn an assignment of his policy has not deprived the Association of any lawful right or interest, pecuniary or otherwise. Notwithstanding any relation he may have borne to the Association, he has done it no injury in acquiring Wrenn's policy. He is, therefore, entitled to recover from it the amount of the policy, subject to a deduction of the amount for premiums paid by it on the policy; and he is also entitled to recover the amount contributed by him to enable it, along with like contributions from other members, to pay the interest on its debt and the premiums on the policies assigned to the Insurance Company as collateral security for the said debt.

On April 15, 1896, a judgment was confessed by the Commercial Building Association in the Circuit Court of Lynchburg in favor of the Commercial Bank of Lynchburg for the sum of $734.94, and constitutes a lien on the property of the Association. The issue was made by the bill that the judgment created an illegal preference in favor of one of the creditors of the Association, and is within the provisions of sec. 1149 of the Code. The evidence proves that the judgment was not for a debt contracted or money borrowed at the time of the creation of the lien, but for an antecedent debt.

Any lien or encumbrance created by the voluntary act of such company, that is, a company chartered by a court, for the

purpose of giving a preference to one creditor over another creditor, except to secure a debt contracted or money borrowed at the time, is within the provisions of the statute, and by the express terms thereof enures to the benefit ratably of all its creditors. A confession of judgment is not a *passive* but an *active* act on the part of the debtor. Such a company may *suffer* a judgment to be recovered against it by default, where it has no defence to the debt, but it cannot *confess* a judgment for an antecedent debt, and thus voluntarily and actively *create* a lien on its property, without the lien enuring ratably to the benefit of all its existing creditors. Such an act is within the spirit as well as the very letter of the statute. The judgment was confessed by the President of the Association in pursuance of a resolution adopted that day by the Association, and he testified that it was done ".to secure the Commercial Bank in preference to securing ourselves," Tate being confessedly one of " ourselves." It follows that the lien created by the judgment confessed in favor of the Commercial Bank enures to the benefit ratably of all the creditors of the company then existing.

The decree of the Circuit Court must be reversed, and the cause remanded to it for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*