GEORGIA MAY WILLIAMSON *v.* WILLIAMSON PAINT MANUFACTURING COMPANY *et al.*

(No. 7470)

Submitted March 8, 1933.   Decided March 28, 1933

(Rehearing denied June 5, 1933)

---

*Silverstein & Silverstein, Steptoe & Johnson, Stanley C. Morris,* and *J. Hornor Davis,* 2d, for appellant.

*Thomas Coleman* and *Simms & Simms,* for appellee Paint Co.

HATCHER, JUDGE:

This is a suit to enjoin the prosecution of an action at law brought by Williamson Paint Manufacturing Company (hereafter called Paint Company or the company) against the Prudential Insurance Company to recover the proceeds of a policy of insurance taken out by the Paint Company upon the life of C. E. Williamson, deceased. The plaintiff herein was the wife of Mr. Williamson, and claims an equitable right to the insurance. The circuit court found in favor of the Paint Company and plaintiff secured an appeal.

C. E. Williamson was general manager of the Paint Company. On August 21, 1921, the following resolution was passed by the board of directors of the company: "On motion of C. E. Williamson, seconded by D. G. Lilly, the said Williamson was directed to take the matter up with J. O. Jennings relative to a life insurance policy for the benefit of the company, and to apply for a ten year term policy in the amount of ten thousand dollars, said policy to be payable to said company and for the sole benefit of said company. The treasurer of the said company to pay all the premiums on said policy." (J. O. Jennings was an insurance agent and a stock-

holder in the Paint Company.) Pursuant to the resolution, Williamson procured from the Prudential Insurance Company a policy on his life, payable to the Paint Company. Upon his request the policy stated, "The right to change the beneficiary has been reserved by the insured." The other officers of the Paint Company did not notice that reservation when the policy was delivered. The premiums were paid by the Paint Company until 1928, when Williamson sold his stock and severed his connection with it. Williamson, the purchaser of his stock, and the Paint Company executed a contract on February 1, 1928, wherein it was convenanted as follows: "It is agreed that the Williamson Paint Manufacturing Company *having* no further claims against the said C. E. Williamson and that the said C. E. Williamson has no claims against the Williamson Paint Manufacturing Company." When the contract was negotiated and executed, nothing was said about the policy, and it was retained by the Paint Company. Shortly afterwards, Williamson requested the Insurance Company (in writing) to change the beneficiary in the policy from the Paint Company to his wife (the plaintiff). He was informed by the Insurance Company that such change could be made only on the face of the policy. He then made several unsuccessful attempts to have the Paint Company surrender the policy to him. The annual premium fell due on October 7, 1928, and the Paint Company failed to pay it. The policy provided "a grace period" of thirty-one days in which the premium could be paid after it became due. The policy also provided "automatic extension insurance" for one hundred and twenty-four days after failure to pay the premium. Williamson himself paid one quarter of the premium on November 7, 1928. He died on January 13, 1929, which was within the "automatic extension" period.

Williamson was directed by the Paint Company (on his own motion) to procure the policy for its "sole benefit". The words "sole benefit" exclude the thought that Williamson was to have any benefit (right) whatsoever in the policy. In executing that order he was acting for it and not for himself, and he should have secured to it the right to change the beneficiary. Since he was not entitled to reserve the right to himself, we must regard him as holding that right in trust

for the company. The fact that the policy was taken on his life was a mere incident as far as he was concerned. That fact gave him no more control of the policy than it gave to any other stockholder of the Paint Company. Prior to sale of his stock in the company he was interested impersonally in the policy as a stockholder. After selling his stock he had no interest whatever in the policy. It had been paid for wholly by the company and by his express stipulation with the company's directors (August 21, 1921) it was the "sole" property of the company. He could do nothing personally which would supersede, prejudice or defeat the rights of the company in its exclusive property—the policy. He could not extend the policy for his own benefit beyond the "automatic extension" period without the permission of the company. It had the arbitrary right as sole proprietor of the policy to let it expire at the termination of that period. Consequently his payment on the premium secured him no right in the policy and took no right from the company. It could ignore the payment or at its election ratify and claim the benefit of his act. We may treat the policy as in force either by reason of the automatic extension clause or because of his payment. Under either view, the Paint Company is entitled to the insurance.

Points presented in behalf of plaintiff are based on cases where the insured secured policies for their own purposes and paid the premiums themselves, and therefore do not apply here.

Our position is fully supported by the decision in *Wellhouse* v. *Paper Co.*, 29 Fed. (2d) 886-7. The controlling circumstances there are comparable in a general way to those here. The Federal court held as follows: "At the time the policy was issued, the paper company had an insurable interest in the life of the insured. *United States* v. *Supplee-Biddle Co.*, 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970. This proposition was not controverted. A policy of life insurance originally valid does not cease to be so by the cessation of the beneficiary's interest in the life of the insured, unless so provided in the policy itself. *Connecticut Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457, 24 L. Ed. 251; *Grigsby* v. *Russell*, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863. In obtaining the policy the insured acted, not for himself individually, but for the paper company, which paid

748

for the insurance. The insurance having been acquired at the expense and for the benefit of the paper company, that company was the owner of the policy and the beneficiary of its provisions, including the one as to changing the beneficiary. Whatever rights or privileges the insured had under the terms of the policy, he held in trust for the party from whom the consideration proceeded. *Smithsonian Institution* v. *Meech*, 169 U. S. 398, 407, 18 S. Ct. 396, 42 L. Ed. 793; *Rothwell* v. *Dewees*, 2 Black, 613, 17 L. Ed. 309; 26 R. C. L. 1219. The policy as a whole was an asset of the paper company. Nothing in the evidence as to the circumstances attending the issue of the policy furnishes any support for the contention that Alvin Wellhouse, before or after he ceased to have any connection with the paper company, had the right to change the beneficiary without the consent of the paper company. We conclude that he did not have that right." Accord: *Allen* v. *Hudson*, 35 Fed. (2d) 330.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*