## MIMS HOTEL CORP. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6135.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 12, 1950.

Decided Nov. 8, 1950.

56

Richard G. Herndon, Wheeling, W. Va., for petitioner.

Hilbert P. Zarky, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, Sp. Asst. to the Atty. Gen. on brief), for respondent.

Before PARKER, Chief Judge, and SOPER, Circuit Judge, and TIMMER-MAN, District Judge.

PARKER, Chief Judge.

This is an appeal from the Tax Court in a case involving the proceeds of a life insurance policy on an officer of a corporation. The policy had been taken out and assigned to secure a loan to the corporation made by the insurance company; and upon the death of the officer the face of the policy was credited on the loan. The corporation, which was the taxpayer, contended that the proceeds of the policy should be included in its equity invested or equity borrowed capital and that its excess profits tax for the year in question be reduced accordingly. The Tax Court held the policy to be an asset of the corporation and

refused to include its proceeds in equity invested or equity borrowed capital. 13 T. C. 901. We think that this was clearly correct.

The facts are fully stated in the opinion of the Tax Court and need not be repeated here. They may be summarized briefly as follows: Taxpayer is a Virginia corporation organized in the year 1930 by two brothers, John W. and Ralph E. Mims, to build and operate the Mimslyn tourist hotel at Luray, Virginia. These brothers were the principal stockholders of the corporation and each held 500 shares of its capital stock of the par value of $100 per share, for which they paid $25,000 in cash and transferred property valued at $75,000. The remaining stock of the corporation consisted of 127 shares distributed among 20 persons. Pursuant to an understanding reached prior to the issuance of the stock, the corporation procured a loan from the Shenandoah Life Insurance Company of $150,000, later increased to $165,000, with which to erect a hotel, and secured same by a mortgage on its property and the assignment of two policies of life insurance in the sum of $50,000 each on the lives of John W. and Ralph E. Mims.

The policies of life insurance had been taken out upon the requirement of the life insurance company, which as a condition of making the loan had stipulated that they be taken out and assigned as security, the "proceeds of either policy, in the event of the death of the insured to be applied to the liquidation of the loan." The policies were payable to the executors or administrators of the insured, with right on the part of the insured to change the beneficiary, but were promptly assigned as security for the loan in accordance with the agreement under which the loan was being made. The premiums were paid by the taxpayer and this was shown upon its books, and the cash surrender value of the policies was carried on its books as an asset. John W. Mims died in 1939 and the $50,000 which then became due on the policy issued on his life was credited by the insurance company on the debt for which it had been assigned; and taxpayer reported the $50,000 in its

tax return of that year as nontaxable income from a life insurance policy.

On these facts, we do not think that the finding of the Tax Court to the effect that the policy was the property of taxpayer can be disturbed; and, this being true, the questions which would arise if the policy were not the property of taxpayer need not be considered. Taxpayer relies upon Tate v. Commercial Building Ass'n et al., 97 Va. 74, 33 S.E. 382; but that case is not in point. There a member of a loan association in whose life the association had no insurable interest, took out a policy which he assigned as security for money loaned the association; and the holding of the court was that, although the agreement to take and assign the insurance was contrary to public policy and void, the policy would nevertheless be enforced for the benefit of the beneficiary named therein. Here taxpayer had an insurable interest in the life of the insured; and there is consequently no reason why the policy should not be treated as the property of taxpayer or why its proceeds should not be held to have extinguished pro tanto the indebtedness to which it was applied as the parties had agreed instead of giving rise to rights of exoneration or subrogation. Very much in point is the case of Walker v. Penick's Ex'r, 122 Va. 664, 95 S.E. 428, cited by the Tax Court. In that case a loan had been made against a policy of life insurance, and the question was whether, upon payment of the loan from the proceeds of the policy, the beneficiary was subrogated to a claim in that amount against the estate of the insured to whom the loan had been made. In holding to the contrary, the court based its decision upon the ground that it had been expressly agreed that the proceeds of the policy should be applied to the payment of the loan and that the proceeds thus constituted a fund primarily applicable to that purpose so that no claim for exoneration or subrogation could arise because of the application. As was well said by the Tax Court: "We are of opinion that John W. Mims likewise intended that policy proceeds constitute a 'primary fund' for payment of petitioner's loan. From the attendant circumstances it is manifest that

his motive in applying for the policy was to meet a condition which Shenandoah imposed as a prerequisite to making petitioner a loan. It was agreed in advance not merely that the policy would be pledged as security but further that the proceeds would 'be applied to the liquidation of the loan.' The policies on the lives of both brothers were taken out for petitioner's benefit; petitioner paid the premiums; it carried the policies on its books as assets at their cash surrender value, and when John W. Mims died, it constructively received $50,000 by application of the policy proceeds to its debt. During his lifetime John W. Mims paid nothing for the policy, and had no rights over it inherent in an owner. As a matter of form his estate was designated beneficiary, but before the policy was even issued, he was under contract to direct that its proceeds be applied to petitioner's loan, and immediately upon issuance he assigned 'all right, title and interest therein' to Shenandoah as collateral. *There was never a time when John W. Mims was free to treat the policy as his own property, he never paid anything for it, and upon his death his estate had no claim against Shenandoah because the proceeds were expressly applicable to the loan, —not applicable when and if petitioner should be in default."* (Italics supplied).

Very much in point, also, is Wellhouse v. United Paper Co. et al., 5 Cir., 29 F.2d 886, 887. In that case, as in this, one of the officers and principal stockholders of a corporation took out a policy of insurance on his life for the benefit of the corporation, reserving the right to change the beneficiary, the premiums being paid by the corporation for whose benefit the insurance was taken. Upon severing his relationship with the corporation, the insured wrote the agent of the company naming his wife as beneficiary. In holding that the corporation and not the wife was entitled to the proceeds of the policy on insured's death, the court said: "In obtaining the policy the insured acted, not for himself individually, but for the paper company, which paid for the insurance. The insurance having been acquired at the expense and for the benefit of the paper company, that company was

the owner of the policy and the beneficiary of its provisions, including the one as to changing the beneficiary. Whatever rights or privileges the insured had under the terms of the policy, he held in trust for the party from whom the consideration proceeded. Smithsonian Institution v. Meech, 169 U.S. 398, 407, 18 S.Ct. 396, 42 L.Ed. 793; Rothwell v. Dewees, 2 Black 613, 17 L.Ed. 309; 26 R.C.L. 1219. The policy as a whole was an asset of the paper company."

See also Allen v. Hudson, 8 Cir., 35 F.2d 330; Williamson v. Williamson Paint Co., 113 W.Va. 744, 169 S.E. 408.

The question as to whether the policy was the property of taxpayer or the property of insured pledged as security for taxpayer's debt depended upon the intention of the parties. Smith v. Coleman, 184 Va. 259, 35 S.E.2d 107. This was a pure question of fact, as to which we are bound by the finding of the Tax Court unless clearly wrong. We think the finding was clearly right.

Affirmed.