**F. E. CARD and W. S. Adams,
Petitioners,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

**No. 15005.**

United States Court of Appeals
Eighth Circuit.

Oct. 13, 1954.

Thomas M. Davies, Lincoln, Neb., for petitioners.

Karl Schmeidler, Special Asst. to the Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Howard P. Locke, Davis W. Morton, Jr., Special Assts. to the Atty. Gen. on the brief, for respondent.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to review decisions of the Tax Court of the United States adjudging deficiencies in petitioners' income tax returns for the calendar year 1945. 20 T.C. 620. The cases were consolidated for hearing before the Tax Court and on appeal to this court.

The sole question on appeal is the correctness of the Tax Court's ruling that the words "aggregate premiums or consideration paid", as contained in section 22(b) (2) (A), Internal Revenue Code, 26 U.S.C.A.[1], mean premiums paid by pe-

---

1. "§ 22. Gross income
 "(a) General definition.
 * * * * *
 "(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:
 * * * * *
 "(2) Annuities, etc.
 "(A) In general. Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the tax-

able year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor. This subparagraph and par-

titioners only and not those paid by petitioners' employer.

The facts were stipulated by the parties herein and are wholly undisputed. Petitioners, cash basis taxpayers, in 1936 owned in equal proportions the entire 1000 shares of outstanding capital stock of the Card-Adams Company, a Nebraska corporation. Card-Adams Company was the owner of 200 shares of a total of 500 shares of the outstanding capital stock of State Securities Company, another Nebraska corporation. In addition, petitioner Card owned 77½ shares and petitioner Adams owned 48 shares of stock in State Securities Company. During the period 1936–1945, inclusive, Card and Adams were president and executive vice-president, respectively, of State Securities Company.

In 1936 petitioners individually made application for and were issued ten-year endowment life insurance policies, payable at maturity to them. Petitioner Card's policy was in the face amount of $14,100 and designated his employer, State Securities Company, as death beneficiary. The face value of petitioner Adams' policy was $10,000 and also named his employer, State Securities Company, as death beneficiary. Each policy granted the insured the right to change the beneficiary at any time. However, neither of the petitioners exercised that right and State Securities Company remained death beneficiary on both policies at all times pertinent herein.

During the nine year period from 1936 to 1945, inclusive, petitioners paid the annual premiums due on said policies in the years 1940–41–42 and petitioners employer, State Securities Company, paid the premiums the remaining six years. On the Card policy, petitioner paid $4,331.44 and State Securities Company $8,861.00 in premiums, a total of $13,192.44. On Adams' policy, petitioner paid $3,507.00 and State Securities Com-

pany $7,041.00 in premiums, a total of $10,548.00. Neither of the petitioners nor State Securities Company deducted the premiums paid by each in their respective income tax returns, nor did petitioners report as taxable income to them any of the premiums paid by State Securities Company.

In 1945 petitioners elected to receive the cash surrender value of their policies. Accordingly, Card and Adams were issued checks in the amount of $12,406.26 and $8,518.20, respectively, as the full cash surrender value of said policies. The petitioners did not report any part of the sums so received as taxable income in 1945. Thereafter the Commissioner determined deficiencies in petitioners' 1945 income tax returns in amounts by which the cash surrender value of said policies exceeded the premiums paid by the petitioners. Decisions in the suits brought before the Tax Court for redetermination of deficiencies being adverse, petitioners took this appeal.

■ Petitioners contend that the language of section 22(b) (2) (A) of the Internal Revenue Code is clear and unambiguous and was therefore not subject to construction by the Tax Court. They urge that the words "aggregate premiums or consideration paid" clearly mean all premiums paid from whatever source and not, as ruled by the Tax Court, only those premiums paid by petitioners.

The Tax Court has heretofore considered and decided the precise issue here involved. Its decision in Charles L. Jones, 2 T.C. 924, was the basis for its ruling in this case. In discussing this same issue in the Jones case, supra, the Tax Court, at page 933, said:

"The clause 'aggregate premiums or consideration paid for such annuity' at first blush seems to be unambiguous and to connote that the payments need not be made by the annuitant. Ignoring for the time

agraph (1) shall not apply with respect to so much of a payment under a life insurance, endowment, or annuity con-

tract, or any interest therein, as, under section 22(k), is includible in gross income; * * *"

being the administrative interpretation, there seems to be but slight basis for a conclusion that payment need be made by any particular person. Yet there is some. First, it must be kept in mind that we are dealing with a revenue act, the purpose of which is to tax all 'gains, profits, and income' including 'compensation for personal service, of whatever kind and in whatever form paid.' * * * Then, too, it will be noted that the provision with reference to annuities is contained in the section dealing with amounts received under life insurance and endowment policies, which are usually purchased by the insured himself and made payable to him or to members of his family. In this connection substantially the same language is used, the expressed intention being to tax as income such amounts as 'exceed the aggregate premiums or consideration paid.' The obvious intention of Congress in dealing with the three types of contracts was to permit the insured or annuitant and his beneficiaries to recover tax-free the cost, i. e., the amount paid by them for the policies. This view is supported by the concluding sentence in the section, dealing with a transfer for a valuable consideration, under which only the sums actually paid by the transferee may be recovered tax-free."

We think the Tax Court in the Jones case properly construed the clause "aggregate premiums or consideration paid" contained in section 22(b)(2)(A) of the Internal Revenue Code. It seems apparent that Congress intended that an insured, under this section, should recover tax-free only an amount equal to that which he paid on his insurance contract. We note in this connection that Congress, obviously cognizant of the construction placed on this section by the Tax Court in the Jones case, has incorporated this clause, without substantial change, into the new internal revenue laws. See Internal Revenue Code of 1954, § 72(c)(1), 26 U.S.C.A.

We are not persuaded by petitioners' argument that the Jones case is inapplicable here because it involved an annunity contract whereas we have under consideration an endowment contract. The Tax Court in the Jones case specifically noted that the words "aggregate premiums or consideration paid" applied to all three types of insurance contracts referred to in section 22(b)(2).

We therefore conclude that the Tax Court was not in error in ruling that the exclusion granted by section 22(b) (2) (A) applied only to premium payments made by petitioners.

Petitioners have presented an alternate argument to apply in the event the above contention is rejected, as it has been. They contend that the premium payments made by State Securities Company should be considered as having been paid by them, either under the familiar doctrine of constructive receipt or under the broad terms of section 22 (a) of the Internal Revenue Code. In support of this argument petitioners rely heavily upon the fact, which was found by the Tax Court, that all the incidents of ownership of the endowment contracts were possessed by petitioners and their employer had no rights with respect thereto, except as death beneficiary. It is urged that this finding raised a strong presumption that premium payments by the employer constituted income to petitioners, and, when considered with the presumption that payments by a corporation to an employee are presumed to be compensation for services, was sufficient to sustain the burden of proof resting upon petitioners.

 Upon appeal, findings of the Tax Court are conclusive upon the Court of Appeals unless clearly erroneous. Collamer v. C. I. R., 4 Cir., 1950, 185 F.2d 146; Mims Hotel Corp. v. C. I. R., 4 Cir., 1950, 185 F.2d 55; A. & A. Tool & Supply Co. v. C. I. R., 10 Cir., 1950, 182 F.2d 300; Maverick-Clarke Litho Co. v. C. I. R., 5 Cir., 1950, 180 F.2d 587. Hav-

ing prevailed in the court below the Commissioner, on review, is here entitled to the benefit of every inference which reasonably can be drawn from the evidence, viewed in a light most favorable to the Commissioner and most unfavorable to the petitioners. Therefore, the finding of the Tax Court that "due to a complete lack of evidence as to facts and circumstances regarding payment by employer of petitioners' premiums, petitioners have failed to sustain burden of proof that such payments constituted income to them by way of constructive receipt or under the general provisions of section 22(a)" must be affirmed unless clearly erroneous.

Petitioners introduced evidence, in the form of a stipulation of facts and attached exhibits, which established that each petitioner was issued a ten-year endowment life insurance policy; that the incidents of ownership of said policies remained in petitioners; and that some, but not all, of the premiums due on said policies were paid by petitioners' employer. This was the sum of the evidence relied on by petitioners to sustain their burden of proof that the premium payments made by their employer constituted income to them. They offered no evidence of a corporate resolution, plan, or other agreement tending to show that the endowment insurance contracts were intended by the corporation to be additional compensation to them. Since petitioners were majority stockholders and principal officers of the corporation they presumably could have voted additional compensation to themselves in the form of insurance premium payments. If such a plan or agreement existed petitioners were in a position to know about it and proof thereof could easily have been brought before the Tax Court. The Tax Court could reasonably infer from the absence of such evidence that the premium payments by the employer were not intended as compensation. It is also significant, as found by the Tax Court, that premium payments made by the employer were not deducted as a corporate expense, nor were they included as taxable income by petitioners on their tax returns. The Tax Court could reasonably infer from these facts that neither the employer nor petitioners regarded the payments as compensation.

On this state of the record we cannot say that the finding of the Tax Court that petitioners failed to sustain the burden of proof that premium payments by their employer constituted income to them was clearly erroneous. It was incumbent upon petitioners to introduce evidence of the facts and circumstances surrounding the transaction as showing an intent on the part of the employer that such payments were deemed additional compensation. We agree with the Tax Court that "Lack of such proof lends an ambiguity to the stipulated facts."

Petitioners argue that the decision of the Tax Court rests upon the presumption of correctness accorded the deficiency found by the Commissioner, which, it is argued, is erroneous because such presumption disappeared when evidence to the contrary was introduced. They point to this language in the opinion of the Tax Court as affirmation of their position: "We are bound by the presumption in the genesis of this case that the respondent is correct in his determination that the employer's premium payments did not constitute income to petitioners in the years paid. It was petitioners' burden to overcome that presumption. Due to a complete lack of evidence with respect to the transaction above discussed, petitioners have failed to sustain their burden. We, therefore, find for the respondent * * *". It is clear that what the Tax Court meant by this language was that there was no substantial evidence upon which to find for the petitioners. The meager evidence introduced by petitioners as tending to establish that premium payments made by the employer constituted income to them was completely rebutted by other facts and circumstances showing that such payments were not intended as additional compensation. Therefore, petitioners failed to sustain their burden of proof and a finding for the Commissioner

was required. Laying aside the presumption of correctness accorded the Commissioner's determination, petitioners as plaintiffs had the burden of proving, by a preponderance of the evidence, the allegations affirmatively made in their petitions, i. e., that the premium payments by the employer constituted income to them in the years paid. This they failed to do.

The decisions of the Tax Court considered herein are affirmed.